IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL COURTOIS,<br><br>    Petitioner,<br><br>  v.<br><br>WARDEN ADAM,<br><br>    Respondent. | No. C 05-5137 CW<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

    Petitioner Paul Courtois, a state prisoner proceeding <u>in propia persona</u>, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Court previously construed the petition as raising the following cognizable claims: 1) Petitioner is innocent of the crime of which he was convicted; 2) he was denied effective assistance of counsel; and 3) he was denied the attorney of his choice. Respondent Warden Adam opposes the petition.  Petitioner did not file a traverse.  The matter was taken under submission on the papers.  Having considered all of the papers submitted by the parties, the Court denies the petition.

BACKGROUND

    The California Court of Appeal described the facts underlying the petition as follows:

> Defendant rented a house which Lisa Piedras had rented before him.  Piedras and her eleven-year-old son Orien went to the house to retrieve belongings stored there.  After defendant allowed them inside, Piedras confronted him about an earlier threat defendant had made against her son.  Saying he would kill them, defendant grabbed an axe and struck Piedras in the head.  Mother and son ran from the house, chased by defendant.  Those summoned to help Piedras found her lying on the ground with a large head wound.  Defendant paced nearby holding a long wooden object and saying, "If anyone tries to break in my house, I'll kill them," and "She gets what she deserves."
>
> Piedras told the responding deputy sheriff that "the old Nazi" hit her with an axe.  Defendant said that after he allowed Piedras inside, she threatened him with scissors and then fell, possibly hitting her head on an axe leaning against the door.
>
> According to the emergency room doctor, Piedras' skin had been split to the skull.  The laceration was not consistent with a fall and was likely caused by an axe or sharp knife.
>
> Defendant testified that Piedras kicked in the door, threatened him with scissors and struck him with a baseball bat.  After his dogs ran into the room and frightened her, Piedras fell and could have struck her head on a sharp object.
>
> The jury convicted defendant of assault with a deadly weapon and attempted voluntary manslaughter as a lesser-included offense of attempted murder.  He was found to have used a deadly weapon.  When the jury was unable to reach a verdict on great bodily injury allegation, it was dismissed.

People v. Courtois, 2005 WL 994024, at *1 (Cal. Ct. App.) (unpublished decision).

LEGAL STANDARD

A federal court may entertain a petition for a writ of habeas corpus on behalf of a "person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).  Under the Antiterrorism and Effective Death Penalty Act,

2

a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, id. at 407-09, while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority -- that is, falls under the first clause of § 2254(d)(1) -- only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. On habeas review, the district court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. See id.

3

at 409.

DISCUSSION

I.  Factual Innocence

Petitioner claims that he is innocent of the crime of which he was convicted.  He asserts that Ms. Piedras was involved in a conspiracy to frame him and that she invaded his home with several gang member friends who attacked him and stole his property.  He also alleges that the prosecution paid the witnesses who testified against him so that they would give false testimony.

"Freestanding" actual innocence claims such as Petitioner's may not be cognizable in non-capital habeas cases.  See Herrera v. Collins, 506 U.S. 390 (1993); Carriger v. Stewart, 132 F.3d 463, 476-77 (9th Cir. 1997).  But see Osborne v. Dist. Attorney's Office for the Third Judicial Dist., 521 F.3d 1118, 1130-31 (9th Cir. 2008) (assuming without deciding that freestanding actual innocence claims are cognizable in federal habeas proceedings in both capital and non-capital cases).  Even assuming that such a claim is cognizable, though, Petitioner would have to make an "extraordinarily high" showing, "affirmatively prov[ing] that he is probably innocent."  Carriger, 132 F.3d at 476.

Petitioner has not made such a showing.  At trial, Ms. Piedras testified that Petitioner struck her in the head with an axe. Rep.'s Tr. (Ex. 2 to Ans.) at 518-532.  Her son confirmed her account of events.  Id. at 436-48.  A witness testified that after the incident, as Ms. Piedras was lying on the ground with a severe head wound, Petitioner paced nearby, stating that Ms. Piedras had gotten "what she deserves" and, "If anyone tries to break in my house, I'll kill them."  Id. at 454-64. A sheriff's deputy

4

1  testified that, when searching Petitioner's house, she observed a
2  trail of blood and collected a broken axe handle and a double-
3  bladed axe.  Id. at 473-94, 506-13.  The doctor who treated Ms.
4  Piedras testified that her injury was consistent with being struck
5  with an axe.  Id. at 570-82.

6  In support of his position, Petitioner simply asserts in vague
7  terms that his conviction is the result of a conspiracy against him
8  and that the testimony at his trial was false.  This is not
9  sufficient to prove that he is innocent, particularly considering
10 the detailed eyewitness testimony and other evidence introduced
11 against him at trial.  Accordingly, Petitioner's asserted factual
12 innocence is not a basis for granting habeas relief.

13 II.  Ineffective Assistance of Counsel

14 A claim of ineffective assistance of counsel is cognizable as
15 a claim for denial of the Sixth Amendment right to counsel, which
16 guarantees not only assistance, but effective assistance of
17 counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The
18 benchmark for judging any claim of ineffectiveness is whether
19 counsel's conduct so undermined the proper functioning of the
20 adversarial process that the trial cannot be relied upon as having
21 produced a just result.  Id.  The right to effective assistance
22 counsel applies to the performance of both retained and appointed
23 counsel without distinction.  See Cuyler v. Sullivan, 446 U.S. 335,
24 344-45 (1980).

25 In order to prevail on a Sixth Amendment ineffectiveness of
26 counsel claim, a petitioner must establish two things.  First, he
27 must establish that counsel's performance was deficient, that is,
28 that it fell below an "objective standard of reasonableness" under

5

prevailing professional norms.  <u>Strickland</u>, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Id.</u>  However, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  <u>Id.</u> at 690.

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the <u>Strickland</u> test if the petitioner cannot establish incompetence under the first prong.  See <u>Siripongs v. Calderon</u>, 133 F.3d 732, 737 (9th Cir. 1998).  Similarly, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies.  See <u>Strickland</u>, 466 U.S. at 697; <u>Williams v. Calderon</u>, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (approving district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice).

Petitioner states that his counsel was ineffective, but he articulates no factual allegations to support his claim except that his attorney withdrew before trial.  Petitioner thus suggests that he was forced to proceed to trial without an attorney.  The record demonstrate otherwise.

Petitioner first appeared in court with retained counsel. Clerk's Tr. (Ex. 1 to Ans.) at 10.  On November 30, 2000,

6

Petitioner's attorney was relieved and the public defender was appointed to represent him. Id. at 16. The next day, the public defender declared a conflict of interest, and conflict counsel was appointed. Id. at 17. Conflict counsel continued to represent Petitioner until January 8, 2002, when Petitioner appeared with his own retained counsel and conflict counsel was relieved. Id. at 55.

On July 18, 2002, the first day of Petitioner's trial, his counsel moved to withdraw, citing "an irreconcilable and irrevocable breakdown of the attorney-client relationship and conflict of interest." Rep.'s Tr. at 101. The motion was based on Petitioner's erratic behavior, including anti-Semitic letters Petitioner had sent to various organizations in which he advocated violence against members of an Israeli conspiracy that he maintained was persecuting him. At the same time, Petitioner sought to have his counsel discharged. The court granted these requests, appointed conflict counsel, and declared a mistrial. Clerk's Tr. at 245.

On August 12, 2002, Petitioner moved to discharge conflict counsel and to represent himself. 8/12/02 Rep.'s Tr. at 30. The court informed Petitioner of his absolute right to be represented by an attorney and questioned him about his decision to ensure that it was informed. Id. at 30-35. The court also told Petitioner that he would not be able to complain of ineffective assistance of counsel if he represented himself. Id. at 32-33. After Petitioner acknowledged the risks involved with representing himself, the court granted his motion. Id. at 35. Petitioner's new trial began on October 28, 2002 and he represented himself for the duration.

Because Petitioner represented himself at trial, he cannot

7

obtain habeas relief on the basis of ineffective assistance of counsel in connection with the trial itself. See Savage v. Estelle, 924 F.2d 1459, 1466 (9th Cir. 1990) ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" (quoting Faretta v. California, 422 U.S. 806, 834-35 n.46 (1975))). Nor has Petitioner pointed to any deficiency in his earlier representation by counsel, let alone a deficiency that ultimately prejudiced him. Accordingly, his claim is denied.

III. Denial of Counsel of Choice

The constitutional right to representation in criminal cases requires that a defendant be "afforded a fair opportunity to secure counsel of his own choice." Powell v. Alabama, 287 U.S. 45, 53 (1932). However, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them," United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006), and thus "a defendant may not insist on representation by an attorney he cannot afford," Wheat v. United States, 486 U.S. 153, 159 (1988).

Petitioner asserts that he was denied the attorney of his choice. He does not explain the factual basis for this claim, and none appears in the record. He was not prevented from retaining counsel of his choice -- to the contrary, he retained two different attorneys during the course of the litigation. Insofar as his claim is based on a lack of choice with respect to his appointed counsel, it is foreclosed by case law.

IV. Validity of Petitioner's Decision to Represent Himself

The petition could be interpreted as asserting a claim that

Petitioner was unlawfully allowed to represent himself because he was not mentally competent to waive his right to counsel. See Godinez v. Moran, 509 U.S. 389 (1993). Because the Court did not previously identify this as a cognizable claim, Respondent did not address the matter in his memorandum in opposition to the petition. Nonetheless, the Court has reviewed the record and concludes that no violation of Petitioner's right to counsel was committed. On direct appeal, the California Court of Appeal thoroughly discussed the circumstances surrounding Petitioner's decision to represent himself, and its determination that the decision was unequivocal and was made knowingly and intelligently was not an unreasonable application of clearly established federal law. See People v. Courtois, 2005 WL 994024, at *1-*5, *6-*8.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file. The parties shall bear their own costs.

IT IS SO ORDERED.

Dated:  9/29/08

_____
CLAUDIA WILKEN
United States District Judge

9

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

COURTOIS,

       Plaintiff,

v.

ATTORNEY GENERAL OFFICE et al,

       Defendant.

Case Number: CV05-05137 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 29, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Paul Craig Courtois
CDC T-83017
Corcoran State Prison
PO Box 7100
Corcoran, CA 93212

Ross Charles Moody
Attorney General of the State of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

Dated: September 29, 2008

       Richard W. Wieking, Clerk
       By: Sheilah Cahill, Deputy Clerk